

Karin Frank Debtor-in-Possession in pro se
8378 Hillsbrook Drive
Antelope, CA 95843
Phone (916) 721-6463
Fax    (916) 671-1654

FILED JKIS

APR 12 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION**

| In re:<br><br>KARIN M. FRANK<br><br>Debtor in Possession | Case No. 10-36150<br><br>Chapter 11<br>DCN: KMF-21<br><br>**Ammended**<br>**Plan of Reorganization**<br><br>Hearing Date: February 28, 2011<br>Hearing Time: 10:00 AM<br><br>Department A-Courtroom 28<br>Honorable Judge McManus |
|---|---|

## AMENDED PLAN OF REORGANIZATION OF KARIN M. FRANK

### ARTICLE I - SUMMARY

    This Amended Plan of Reorganization (the "**Plan**") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") proposes to pay the creditors of **KARIN FRANK**, the above-captioned debtor-in-possession (the "**Debtor**") from the reorganization of rental properties and future income.

    This Plan provides for 1 class of secured claims, and 1 class of wholly unsecured claims. Each secured claim is placed within its own sub-class and is provided for with monthly installment payments, equal to the total balance amortized over thirty (30) years with simple interest equal to four percent (4%) per annum. General unsecured creditors holding allowed claims will receive minimum monthly distributions, all summing to eighty-five percent (85%) of Debtor's net income per month, or $1,008.10 per month, with whichever figure is greatest used each month. The $1,008.10 minimum total monthly distribution to the unsecured claims is based on Debtor's projected net income, which is estimated at $1,186.00 per month, of which 85% yields $1,008.10 per month. For sixty (60) months, each month the plan shall provide the greatest of 85% of Debtor's net income for that month or $1,008.10, which shall be distributed pro rata to each of the allowed

EXHIBIT A

general unsecured claim, and thus this Plan provides that the unsecured claims (class 2) will receive no less than a 3.7% dividend pursuant to this Plan. This Plan also provides for the payment of administrative claims as agreed.

All creditors should refer to Articles III through V of this Plan for information regarding the precise treatment of their claims. A Disclosure Statement that provides more detailed information regarding this Plan and the rights of creditors was circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

## ARTICLE II - DEFINITIONS

2.1　"Allowed Claim" shall mean a Claim (a) in respect of which a proof of claim has been filed with the court within the applicable period of limitation fixed by Bankruptcy Rule 3001; or (b) scheduled in the List of Creditors or Schedules prepared and filed with the court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or un-liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or an order of the court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

2.2　"Allowed Interest" shall mean an Interest (a) in respect of which a proof of interest has been filed with the court within the applicable period of limitation fixed by Rule 3001; or (b) scheduled in the list of equity security holders prepared and filed with the court pursuant to Rule 1007(b), in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or an order of the court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

2.3　"Allowed Secured Claim" shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which Debtor has an interest, or which is subject to setoff under Section 553 of the Code to the extent of the value (determined in accordance with Section 506(a) of the Code) of the interest of the holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

2.4　"Claim" shall mean any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment against Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, beneficial, secured or unsecured.

2.5　"Class" shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article II hereof.

2.6 "Code" shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. and any amendments thereof.

2.7 "Confirmation Date" shall mean the date upon which the Order of Confirmation is entered by the court.

2.8 "Court" shall mean the United States Bankruptcy Court for the Eastern District of California, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

2.9 "Creditor" shall mean any person or entity that has a claim against the debtor.

2.10 "Debtor" shall mean Karin M. Frank

2.11 "Effective Date" shall mean the date upon which the order of Confirmation is no longer subject to appeal or certiorari proceeding, or the date on which no such appeal or certiorari proceeding is then pending, and on which date all of the conditions to the effectiveness of the Plan expressly set forth in the Plan have been fully satisfied or effectively waived.

2.12 "Indebtedness" as applied to the Debtor shall mean:

(a) all indebtedness or other obligations of the Debtor for borrowed money for the deferred purchase price of property or services.

(b) all indebtedness of the Debtor, contingent, direct or otherwise, secured (or for which the holder of such indebtedness has an existing right contingent or otherwise to be secured) by any mortgage, pledge, lien, security interest or vender's interest under any conditional sale or other title retention agreement existing on any property or asset owned or held by the Debtor, whether or not the indebtedness secured thereby shall have been assumed by the Debtor (hereinafter "Secured Indebtedness"); or

(c) all indebtedness of others, secured or unsecured, directly or indirectly guaranteed, endorsed, or discounted with recourse by the Debtor, or in respect of which the Debtor is otherwise directly or indirectly liable, including without limitation, indebtedness in effect guaranteed by the Debtor through any agreement (contingent or otherwise) to purchase, repurchase or otherwise acquire such indebtedness or any security therefore, or to provide funds for the payment or discharge of such indebtedness or of any other liability of the obligor of such indebtedness (whether in the form of loans, advances, stock purchases, capital contributions or otherwise), or to maintain the solvency or any balance sheet or other financial condition of the obligor of such indebtedness, or to make payment for any products, materials or supplies or for any transportation or services regardless of the non-delivery or non-furnishing thereof.

2.13   "Net Income" shall have the same definition as is used on Schedule J of the Official Bankruptcy Forms, specifically line 20.c.

2.14   "Order of Confirmation" shall mean the order entered by the court confirming the Plan in accordance with the provisions of Chapter 11 of the Code which order is no longer subject to appeal or certiorari proceeding or as to which no appeal or certiorari proceeding is pending.

2.15   "Person" shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

2.16   "Petition Date" shall mean June 21, 2010 the date on which Debtor filed its Chapter 11 petition with the court.

2.17   "Plan" shall mean this Chapter 11 First Amended Plan, as amended in accordance with the terms hereof or modified in accordance with the Code.

2.18   "Rules" shall mean the Bankruptcy Rules, as amended and supplemented by the Interim Bankruptcy Rules (and local bankruptcy rules) as adopted by the court.

2.19   "Secured Creditor" shall mean any creditor who holds a claim against the Debtor secured by a lien, security interest or other encumbrance which has been properly attached and perfected as required by law with respect to property of the estate, or who holds a claim that is subject to setoff under Section 553 of the Code to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be.

2.20   <u>Undefined Terms and Section Numbers</u>. A term used, but not defined, in this First Amended Plan Including Amended Disclosure Statement Information, but defined in the Code has the meaning given to that term in the code, unless the context clearly indicates or requires otherwise. References in the First Amended Plan Including Amended Disclosure Statement Information to a code section are references to the Code, except as otherwise indicated.

### ARTICLE III – CLASSIFICATION AND TREATMENT OF CLAIMS

This Plan constitutes the Chapter 11 plan of reorganization of the Debtor. All Claims against the Debtor are placed in classes as designated by Classes 1 and 2. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims or Tax Claims (Debtor believes there are no tax claims).

The categories of Claims (as defined in the Bankruptcy Code, listed below classify Claims for all purposes, including, without limitation, voting, confirmation and distribution pursuant to this Plan sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different

Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that any such Claim is allowed in that Class and has not been paid or otherwise settled prior to the effective date of the Plan as determined in paragraph 6.02 below.

**Classification of Claims**

3.01   Class 1 Claims - Class 1 consists of secured notes, each of which is secured by real property. The specific terms of each note are unique, and therefore each individual Class 1 secured claim is placed in its own sub-class. Each Class 1 claimant shall be paid the allowed amount of its claim, plus interest, in monthly installments in amounts calculated by amortization of the full amount of the claim over thirty (30) years, with an interest rate of four (4%) simple per annum for the first five (5) years, and an interest rate of five percent (5%) simple for the last twenty-five (25) years (the remainder of the loan). The specific terms and details for each specific Class 1 secured claim, each placed in its own sub-class, are as follows.

Class 1a – Secured Claim of CHASE HOME LOANS, Acct#5208

(a) *Classification*: Class 1a consists of the Secured Claim of CHASE HOME LOANS, against the Debtor's (property 1) located at 7056 Shadygrove St., Tujunga, CA 91042, which is secured by a lien against this rental property, loan number # xxxx5208.

(a) *Treatment*: The holder of this allowed Class 1a Secured Claim (Chase Home Loans) is impaired, and shall be paid the allowed amount of its claim, which equals $220,000.00, in monthly installment payments calculated by amortization of $220,000.00 over thirty (30) years, with an interest rate of four (4%) simple per annum for five (5) years. Restated as a regular monthly payment amount, the Class 1a claimant (Chase Home Loans) shall be paid $1,050.31 per month for five (5) years on this claim, and with the inclusion of PITI of $349.58 per month (as proposed), the Class 1a claimant shall be paid $1,399.89 per month for the duration of the Plan, or five (5) years. Post-plan and post-discharge, and as described above, Debtor shall continue making monthly payments on this claim for the remaining twenty-five (25) years, with the interest rate used for this twenty-five (25) year period being five (5%) simple per annum.

(b) *Valuation*: The Class 1a Secured Claim is $220,000, per Order of the Court in this case, dated September 28, 2010. The confirmation order approving the plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(c) *Unsecured Portion of the Claim*: Any amount of a Class 1(a) claim that is deemed to be unsecured shall be afforded the treatment set forth in Class 2 below.

*Voting*: Class 1a is an impaired class, and as such, the holder of the Class 1a claim is entitled to vote to accept or reject the Plan.

Class 1b – Secured Claim of CHASE HOME LOANS, Acct#3726

(a) *Classification*: Class 1b consists of the Secured Claim of CHASE HOME LOANS,

against the Debtor's (property 2) located at 2883 Perktel St, Sacramento, CA 95815 which is secured by a lien against the Debtor's rental property, loan number # xxxx3726.

(b) *Treatment*: The holder of this allowed Class 1b Secured Claim (Chase Home Loans) is impaired, and shall be paid the allowed amount of its claim, which equals $50,820.00, in monthly installment payments calculated by amortization of $50,820.00 over thirty (30) years, with an interest rate of four (4%) simple per annum for five (5) years. Restated as a regular monthly payment amount, the Class 1b claimant (Chase Home Loans) shall be paid $242.62 per month for five (5) years on this claim, and with the inclusion of PITI of $94.27 per month (as proposed), the Class 1b claimant shall be paid $336.89 per month for the duration of the Plan, or five (5) years. Post-plan and post-discharge, and as described above, Debtor shall continue making monthly payments on this claim for the remaining twenty-five (25) years, with the interest rate used for this twenty-five (25) year period being five (5%) simple per annum.

(c) *Valuation*: The Class 1b Secured Claim is $50,820.00, per Order of the Court in this case, dated September 28, 2010. The confirmation order approving the plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 1b claim that is deemed to be unsecured shall be afforded the treatment set forth in Class 2 below.

*Voting*: Class 1 is an impaired class, and the holder of the Class 1b claims are entitled to vote to accept or reject the Plan.

### Class 1c – Secured Claim of CHASE HOME LOANS, Acct#8220

(a) *Classification*: Class 1c consists of the Secured Claim of CHASE HOME LOANS, against the Debtor's (property 3) located at 1421 Arcade Blvd Sacramento CA 95815, which is secured by a lien against the Debtor's rental property, loan number # xxxx8220.

(d) *Treatment*: The holder of this allowed Class 1c Secured Claim (Chase Home Loans) is impaired, and shall be paid the allowed amount of its claim, which equals $66,830.00, in monthly installment payments calculated by amortization of $66,830.00 over thirty (30) years, with an interest rate of four (4%) simple per annum for five (5) years. Restated as a regular monthly payment amount, the Class 1c claimant (Chase Home Loans) shall be paid $319.06 per month for five (5) years on this claim, and with the inclusion of PITI of $132.75 per month (as proposed), the Class 1c claimant shall be paid $451.81 per month for the duration of the Plan, or five (5) years. Post-plan and post-discharge, and as described above, Debtor shall continue making monthly payments on this claim for the remaining twenty-five (25) years, with the interest rate used for this twenty-five (25) year period being five (5%) simple per annum.

(e) *Valuation*: The Class 1c Secured Claim is $66,830.00, per pending Order of the Court in this case, dated November 8, 2010. The confirmation order approving the plan shall

set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(f) *Unsecured Portion of the Claim*: Any amount of a Class 1c claim that is deemed to be unsecured shall be afforded the treatment set forth in Class 2 below.

*Voting*: Class 1 is an impaired class, and the holder of the Class 1c claims are entitled to vote to accept or reject the Plan.

### Class 1d – Secured Claim of CHASE HOME LOANS, Acct#0911

(a) *Classification*: Class 1d consists of the Secured Claim of CHASE HOME LOANS, against the Debtor's (property 4) located at 2631 Hawthorne St Sacramento CA 95815, which is secured by a lien against the Debtor's rental property, loan number # xxxx0911.

(b) *Treatment*: The holder of this allowed Class 1d Secured Claim (Chase Home Loans) is impaired, and shall be paid the allowed amount of its claim, which equals $56,401.00, in monthly installment payments calculated by amortization of $56,401.00 over thirty (30) years, with an interest rate of four (4%) simple per annum for five (5) years. Restated as a regular monthly payment amount, the Class 1d claimant (Chase Home Loans) shall be paid $269.27 per month for five (5) years on this claim, and with the inclusion of PITI of $100.62 per month (as proposed), the Class 1d claimant shall be paid $369.89 per month for the duration of the Plan, or five (5) years. Post-plan and post-discharge, and as described above, Debtor shall continue making monthly payments on this claim for the remaining twenty-five (25) years, with the interest rate used for this twenty-five (25) year period being five (5%) simple per annum.

(c) *Valuation*: The Class 1d Secured Claim is $56,401 per Order of the Court in this case, dated September 28, 2010. The confirmation order approving the plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

d *Unsecured Portion of the Claim*: Any amount of a Class 1d claim that is deemed to be unsecured shall be afforded the treatment set forth in Class 2 below.

*Voting*: Class 1 is an impaired class, and the holder of the Class 1d claims are entitled to vote to accept or reject the Plan.

### Class 1e – Secured Claim of CHASE HOME LOANS, Acct#9026

(a) *Classification*: Class 1e consists of the Secured Claim of CHASE HOME LOANS, against the Debtor's (property 5) located at 8024 Renton Way Sacramento CA 95828, which is secured by a lien against the Debtor's rental property, loan number # xxxx9026.

(b) *Treatment*: The holder of this allowed Class 1e Secured Claim (Chase Home Loans) is impaired, and shall be paid the allowed amount of its claim, which equals $151,356.00 in monthly installment payments calculated by amortization of $151,356.00 over thirty (30) years, with an interest rate of four (4%) simple per annum for five (5) years. Restated as a regular monthly payment amount, the Class 1e claimant (Chase Home Loans) shall

be paid $722.60 per month for five (5) years on this claim, and with the inclusion of PITI of $349.58 per month (as proposed), the Class 1e claimant shall be paid $968.04 per month for the duration of the Plan, or five (5) years. Post-plan and post-discharge, and as described above, Debtor shall continue making monthly payments on this claim for the remaining twenty-five (25) years, with the interest rate used for this twenty-five (25) year period being five (5%) simple per annum.

(c) *Valuation*: The Class 1e Secured Claim is $151,356.00 per Order of the Court in this case, dated September 28, 2010. The confirmation order approving the plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 1e claim that is deemed to be unsecured shall be afforded the treatment set forth in Class 2 below.

*Voting*: Class 1 is an impaired class, and the holder of the Class 1e claims are entitled to vote to accept or reject the Plan.

### Class 1f – Secured Claim of CHASE HOME LOANS, Acct#2958

(a) *Classification*: Class 1f consists of the Secured Claim of CHASE HOME LOANS, against the Debtor's (property 6) located at 4912 Fawnridge Way, Antelope CA 95843, which is secured by a lien against the Debtor's rental property, loan number # xxxx2958.

(b) *Treatment*: The holder of this allowed Class 1f Secured Claim (Chase Home Loans) is impaired, and shall be paid the allowed amount of its claim, which equals $162,234.00, in monthly installment payments calculated by amortization of $162,234.00 over thirty (30) years, with an interest rate of four (4%) simple per annum for five (5) years. Restated as a regular monthly payment amount, the Class 1f claimant (Chase Home Loans) shall be paid $794.45 per month for five (5) years on this claim, and with the inclusion of PITI of $268.27 per month (as proposed), the Class 1f claimant shall be paid $1,062.72 per month for the duration of the Plan, or five (5) years. Post-plan and post-discharge, and as described above, Debtor shall continue making monthly payments on this claim for the remaining twenty-five (25) years, with the interest rate used for this twenty-five (25) year period being five (5%) simple per annum.

(c) *Valuation*: The Class 1f Secured Claim is $162,234.00 pending the Order of the Court in this case, on November 8, 2010. The confirmation order approving the plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 1f claim that is deemed to be unsecured shall be afforded the treatment set forth in Class 2 below.

*Voting*: Class 1 is an impaired class, and the holder of the Class 1f claims are entitled to vote to accept or reject the Plan.

### Class 1g – Secured Claim of NATIONSTAR, Acct#7220

(a) *Classification*: Class 1g consists of the Secured Claim of NATIONSTAR, against the Debtor's (property 7) located at 3709 Innovator Way Sacramento, CA 95834 which is secured by a lien against the Debtor's rental property, loan number # xxxx7220.

(b) *Treatment*: The holder of this allowed Class 1g Secured Claim (Nationstar) is impaired, and shall be paid the allowed amount of its claim, which equals $236,484.00, in monthly installment payments calculated by amortization of $236,484.00 over thirty (30) years, with an interest rate of four (4%) simple per annum for five (5) years. Restated as a regular monthly payment amount, the Class 1g claimant (Nationstar) shall be paid $1,129.00 per month for five (5) years on this claim, and with the inclusion of PITI of $382.89 per month (as proposed), the Class 1g claimant shall be paid $1,511.89 per month for the duration of the Plan, or five (5) years. Post-plan and post-discharge, and as described above, Debtor shall continue making monthly payments on this claim for the remaining twenty-five (25) years, with the interest rate used for this twenty-five (25) year period being five (5%) simple per annum.

(c) *Valuation*: The Class 1g Secured Claim is $236,484.00, per Order of the Court in this case, dated September 28, 2010. The confirmation order approving the plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 1g claim that is deemed to be unsecured shall be afforded the treatment set forth in Class 2 below.

*Voting*: Class 1 is an impaired class, and the holder of the Class 1g claims are entitled to vote to accept or reject the Plan.

### Class 1h – Secured Claim of CITI BANK HOME LOANS, Acct#8429

(a) *Classification*: Class 1h consists of the Secured Claim of CITI BANK HOME LOANS, against the Debtor's (property 8) located at 4009 33rd Sacramento, CA 95820 which is secured by a lien against the Debtor's rental property, loan number # xxxx8420.

(b) *Treatment*: The holder of this allowed Class 1h Secured Claim (CitiBank Home Loans) is impaired, and shall be paid the allowed amount of its claim, which equals $76,039.00, in monthly installment payments calculated by amortization of $76,039.00 over thirty (30) years, with an interest rate of four (4%) simple per annum for five (5) years. Restated as a regular monthly payment amount, the Class 1h claimant (CitiBank Home Loans) shall be paid $363.02 per month for five (5) years on this claim, and with the inclusion of PITI of $131.22 per month (as proposed), the Class 1h claimant shall be paid $494.24 per month for the duration of the Plan, or five (5) years. Post-plan and post-discharge, and as described above, Debtor shall continue making monthly payments on this claim for the remaining twenty-five (25) years, with the interest rate used for this twenty-five (25) year period being five (5%) simple per annum.

(c) *Valuation*: The Class 1h Secured Claim is $76,039.00 per Order of the Court in this case, dated September 28, 2010. The confirmation order approving the plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 1h claim that is deemed to be unsecured shall be afforded the treatment set forth in Class 2 below.

*Voting*: Class 1 is an impaired class, and the holder of the Class 1h claims are entitled to vote to accept or reject the Plan.

### Class 1i – Secured Claim of WELLS FARGO HOME LOANS, Acct#1998

(a) *Classification*: Class 1i consists of the Secured Claim of $ 77,134.00  WELLS FARGO HOME LOANS, against the Debtor's (property 9) located at 471 Grand Ave Sacramento, CA 95838 which is secured by a lien against the Debtor's rental property, loan number # xxxx1998.

(b) *Treatment*: The holder of this allowed Class 1i Secured Claim (Wells Fargo Home Loans) is impaired, and shall be paid the allowed amount of its claim, which equals $77,134.00, in monthly installment payments calculated by amortization of $77,134.00 over thirty (30) years, with an interest rate of four (4%) simple per annum for five (5) years. Restated as a regular monthly payment amount, the Class 1i claimant (Wells Fargo Home Loans) shall be paid $368.25 per month for five (5) years on this claim, and with the inclusion of PITI of $133.88 per month (as proposed), the Class 1i claimant shall be paid $500.13 per month for the duration of the Plan, or five (5) years. Post-plan and post-discharge, and as described above, Debtor shall continue making monthly payments on this claim for the remaining twenty-five (25) years, with the interest rate used for this twenty-five (25) year period being five (5%) simple per annum.

(c) *Valuation*: The Class 1i Secured Claim is $77,134.00, per Order of the Court in this case, dated September 28, 2010. The confirmation order approving the plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 1i claim that is deemed to be unsecured shall be afforded the treatment set forth in Class 2 below.

*Voting*: Class 1 is an impaired class, and the holder of the Class 1i claims are entitled to vote to accept or reject the Plan.

### Class 1j – Secured Claim of WELLS FARGO HOME LOANS, Acct#1998

(a) *Classification*: Class 1j consists of the Secured Claim of WELLS FARGO HOME LOANS, against the Debtor's (property 10) located at 842 First Street Sonoma, CA 95476 which is secured by a lien against the Debtor's rental property, loan number # xxxx8420.

(b) *Treatment*: The holder of this allowed Class 1j Secured Claim (Wells Fargo Home Loans) is impaired, and shall be paid the allowed amount of its claim, which equals $186,593.26 in monthly installment payments calculated by amortization of $186,593.26 over thirty (30) years, with an interest rate of four (4%) simple per annum for five (5) years. Restated as a regular monthly payment amount, the Class 1j claimant (Chase Home Loans) shall be paid $890.82 per month for five (5) years on this claim, and with the

inclusion of PITI of $298.89 per month (as proposed), the Class 1j claimant shall be paid $1,189.71 per month for the duration of the Plan, or five (5) years. Post-plan and post-discharge, and as described above, Debtor shall continue making monthly payments on this claim for the remaining twenty-five (25) years, with the interest rate used for this twenty-five (25) year period being five (5%) simple per annum.

(c) *Valuation*: The Class 1j Secured Claim is $186,593.26 per Order of the Court in this case, dated September 28, 2010. The confirmation order approving the plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 1j claim that is deemed to be unsecured shall be afforded the treatment set forth in Class 2 below.

*Voting*: Class 1 is an impaired class, and the holder of the Class 1j claims is entitled to vote to accept or reject the Plan.

### Class 1k – Secured Claim of MET LIFE HOME LOANS, Acct#8544

(a) *Classification*: Class 1k consists of the Secured Claim of MET LIFE HOME LOANS, against the Debtor's (property 11) located 3612 North Country Antelope, CA 95843 which is secured by a lien against the Debtor's rental property, loan number # xxxx8544.

(b) *Treatment*: The holder of this allowed Class 1k Secured Claim (Met Life Home Loans) is impaired, and shall be paid the allowed amount of its claim, which equals $85,000.00, in monthly installment payments calculated by amortization of $85,000.00 over thirty (30) years, with an interest rate of four (4%) simple per annum for five (5) years. Restated as a regular monthly payment amount, the Class 1k claimant (Met Life Home Loans) shall be paid $405.80 per month for five (5) years on this claim, and with the inclusion of PITI of $188.64 per month (as proposed), the Class 1k claimant shall be paid $593.94 per month for the duration of the Plan, or five (5) years. Post-plan and post-discharge, and as described above, Debtor shall continue making monthly payments on this claim for the remaining twenty-five (25) years, with the interest rate used for this twenty-five (25) year period being five (5%) simple per annum.

(c) *Valuation*: The Class 1k Secured Claim is $85,000.00 per Order of the Court in this case, dated September 28, 2010. The confirmation order approving the plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 1k claim that is deemed to be unsecured shall be afforded the treatment set forth in Class 2 below.

*Voting*: Class 1 is an impaired class, and as such, the holder of the Class 1k claim is entitled to vote to accept or reject the Plan.

### Class 1l – Secured Claim of ELVIN MIDKIFF, Acct#0000

(a) *Classification*: Class 1l consists of the Secured Claim of Elvin Midkiff, against the Debtor's (property 11) located at 3612 North Country Antelope, CA 95843 which is

secured by a lien against the Debtor's rental property, loan number # xxxx0000.

(b) *Treatment*: The holder of this allowed Class 11 Secured Claim (Elvin Midkiff) is impaired, and shall be paid the allowed amount of its claim, which equals $69,300.00 in monthly installment payments calculated by amortization of $69,300.00 over thirty (30) years, with an interest rate of four (4%) simple per annum for five (5) years. Restated as a regular monthly payment amount, the Class 11 claimant (Elvin Midkiff) shall be paid $330.85 per month for the duration of the Plan, or five (5) years. Post-plan and post-discharge, and as described above, Debtor shall continue making monthly payments on this claim for the remaining twenty-five (25) years, with the interest rate used for this twenty-five (25) year period being five (5%) simple per annum.

(c) *Valuation*: The Class 11 Secured Claim is $69,300.00 per Order of the Court in this case, dated September 28, 2010. The confirmation order approving the plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 11 claim that is deemed to be unsecured shall be afforded the treatment set forth in Class 2 below.

*Voting*: Class 1 is an impaired class, and the holder of the Class 11 claim is entitled to vote to accept or reject the Plan.

3.02    Class 2 Claims: Class 2 consists of general unsecured claims of the Debtor, which includes the now-bifurcated, formerly unsecured portions of secured claims, now wholly separate and distinct unsecured claims held by Debtor's First & Second Lien-Holder's with secured claims.

(a) *Classification*: Class 2 consists of all general (no priority pursuant to 11 U.S.C. § 507) unsecured claims of all types, without subdivision into subclasses, including those general unsecured claims created by way of bifurcation of formerly secured claims, each subdivided into a distinct secured claim and a distinct unsecured claim pursuant to Orders of this Court.

(b) *Treatment:* Holders of allowed General Unsecured Claims of the Debtor shall receive, in full and final satisfaction of such allowed Class 2 claims, once per month their pro rata share of the greater of either (i) $1,008.10 or (ii) eighty-five percent (85%) of the Debtor's Net Income, to be paid in monthly installments, to include no (0%) interest, for a period of five (5) years. Each General Unsecured Claim will receive no less than a 3.7% dividend pursuant to this Plan.

(c) *Valuation*: The valuation of each unsecured claim shall be either (i) in the case of allowed and unchallenged claims, the amount stated by the creditor holding the claim in the filed claim filed with the Court, or (ii) in the case of challenged claims, the proper amount of the claim as determined by the Court or stipulation by the parties, or (iii) in the case of allowed claims for which no claim is filed the Court, the amount set forth in Debtor's schedules.

*Voting:* Class 2 is impaired and holders of Class 2 claims are entitled to vote to accept or reject the Plan.

### ARTICLE IV – TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES AND PRIORITY TAX CLAIMS

4.01   Unclassified Claims. In accordance with section 1123(a)(1) of the Bankruptcy Code, administrative expense claims, and priority tax claims are not in classes.

4.02   Administrative Expense Claims. Debtor has no outstanding administrative expense claim allowed under Section 503 of the Bankruptcy Code.

4.03   Priority Tax Claims. Debtor has no outstanding priority tax claims.

4.04   United States Trustee Fees. All fees required to be paid by 28 U.S.C. § 1930 will be paid in a timely fashion until the case is closed, dismissed, or converted to another chapter of the Code. All fees are current and any U.S. Trustee Fees owed on the effective date of this Plan will be paid on the effective date.

### ARTICLE V – PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.01   Debtor is not aware of any Executory contracts or unexpired leases to assume or reject. Nonetheless all Executory contracts and unexpired leases of the Debtor that may exist, and were not previously assumed or rejected under 11 U.S.C. § 365 with approval of this court, are hereby expressly rejected.

### ARTICLE VI - MEANS FOR IMPLEMENTATION OF THE PLAN

6.01   Source of Payments. Payments and distributions under the Plan will be funded by the Debtor, based upon her projected monthly rental income and other personal income, which projected amount at present is actually realized by Debtor, and is sufficient to (a) meet Debtor's ongoing necessary business and administrative expenses, (b) meet Debtor's ongoing personal living expenses, and (c) fully fund the Plan as proposed.

6.02   Method of Plan Payments

(a)   Debtor shall commence monthly distributions to the Creditors thirty (30) days after the Effective Date of the Plan.

(b)   Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall be begin on the regular monthly payment date, as established by the Debtor, which is at least thirty (30) days after such claim becomes an

allowed claim.

(c)     Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Bankruptcy Court. In the event that there are disputed claims requiring adjudication and resolution, the Debtor shall establish appropriate reserves for potential payment of such Claims.

6.03     Disbursing agent. The disbursing agent who shall be authorized to make all disbursements and payments required by this Plan is Karin Frank, the Debtor. The disbursements hereunder shall be made by checks drawn on the accounts of the Debtor.

6.04     Post-confirmation Management. The Debtor will manage her properties post-petition in the ordinary course. She will be authorized to enter into, terminate and renew lease agreements as she sees fit. Such activities will include maintaining a reserve account, funded as set forth in Debtor's Schedule J (up to $100 per month per property added to reserve).

## ARTICLE VII – GENERAL PROVISIONS

7.01     Definitions and Rules of Construction. The definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

7.02     Effective Date of Plan. The effective date of this Plan is the eleventh business day following the date of the entry of the confirmation order. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.03     Modification of Plan. Debtor retains the right to request modification of this Plan, at any time prior to its completion, so long as the Plan as so modified is prior to substantial consummation and otherwise complies with 11 U.S.C. § 1127.

7.04     Postconfirmation Reports and Final Decree.

(a) Post-confirmation Reports. At the end of each calendar quarter after confirmation of this Plan, Debtor shall file with the Court a post-confirmation status report, the purpose of which is to explain the progress made toward full administration of the confirmed Plan of Reorganization. The first report shall be filed for the portion of the calendar quarter from the date of confirmation to the end of the quarter. Subsequent reports shall be filed at the expiration of each calendar quarter thereafter until dismissal, conversion, or entry of a final decree closing the case. Reports shall be filed with the Court and served upon the United States Trustee no later than twenty (20) days after the

expiration of the reported quarter.

The report shall include a statement of receipts and disbursements, with the ending cash balance, for the entire ninety (90) day period. The report shall also include information sufficiently comprehensive to enable the Court to determine: (1) whether the order confirming the Plan has become final; (2) whether deposits, if any, required by the Plan have been distributed; (3) whether any property proposed by the Plan to be transferred has been transferred; (4) whether Debtor under the Plan has assumed the business or the management of the property dealt with by the Plan; (5) whether payments under the Plan have commenced; (6) whether accrued fees due to the United States Trustee under 28 U.S.C. § 1930(a)(6) have been paid, and (7) whether all motions, contested matters and adversary proceedings have been finally resolved.

(b) Service of Reports: A copy of each report shall be served upon the United States Trustee and other persons or entities as have requested service of such reports in writing with the Court and served upon Debtor and its counsel, no later than the day upon which the report is filed with the Court.

(c) Final Decree: After the estate is fully administered, Debtor shall file an application for final decree, and shall serve the application on the United States Trustee, together with a proposed final decree. The United States Trustee shall have twenty (20) days within which to object or otherwise comment upon the Court's entry of the final decree.

7.05    The Reorganized Debtor.  The reorganized Debtor may operate her business without supervision or approval by the Bankruptcy Court. Debtor will be authorized to enter into, terminate and renew lease agreements as she sees fit. Such activities will include retaining management companies to aid in the renting of the properties, drafting and serving eviction notices, repairing the properties and maintaining a reserve account.

7.06    Release of Liens, Claims and Equity Interests. After the successful completion of the plan all unsecured liens, claims, mortgages, deeds of trust, or other security instruments against the property of the Debtor's estate shall be fully released and discharged. The security interests of the Debtor's lien holders (secured claimants) however, shall be unimpaired under the Plan with respect to both the Debtor and her property.

7.07    Objection to Claims. Debtor shall review all Claims in this case and shall file any objections as are deemed appropriate in writing on or before sixty (60) days after the Effective Date of this Plan.

7.08    Unclaimed Distributions. Whenever a distribution to a holder of an Allowed Claim remains unclaimed for ninety (90) days from issuance, the holder of the Allowed Claim theretofore entitled to such distribution shall cease to be entitled to such distribution and shall cease to be entitled to any further distribution(s).

7.09.   Event of Default. In the event there is a default in the payment of any claim, or a material default in the performance by Debtor of its obligations under the Plan, and if the Debtor fails to cure the default within twenty (20) calendar days of the receipt of a written notice from such affected Claimant, the holders of such claims shall be free to exercise any

and all remedies they may have under state and federal law, without necessity of further order of this Court. Alternatively, in the event there is a default under the terms of the Plan after the Effective Date, in accordance with Section 1112(b) of the Code, holders of claims shall be entitled to move for dismissal of the case. The provisions of this section shall not be construed to limit the remedies creditors and other parties-in-interest may have under state or federal law.

7.10. <u>Retention of jurisdiction</u>. The court shall retain jurisdiction until this Plan is fully consummated, specifically including, but not limited to, jurisdiction to determine all objections that may be filed to claims of creditors herein; to fix and award compensation to parties who may be so entitled; to hear and determine all questions concerning the assets or property of the Debtor, including any questions relating to any sums of money, services or property due to the Debtor; and to determine all matters of any nature or type necessary or appropriate to carry out the provisions of this Plan.

7.11   <u>Retention and Enforcement of Claims</u>. Pursuant to Section 1123(b)(3) of the Code, the Debtor shall retain and hereby expressly reserves the right and discretion to prosecute or enforce any and all Claims, including, but not limited to, causes of action against third parties under applicable state or federal law, held by Debtor, whether such claims arose or accrued before or after the filing date of June 21, 2010.

7.12   <u>Use of Bankruptcy Code Section 1129(b)</u>. The Debtor, as the proponent of this Chapter 11 Plan, hereby requests pursuant to Section 1129(b) of the Code, that this Court find that the provisions of this Plan provide fair and equitable treatment to and do not unfairly discriminate against those Claimants and interest holders who are impaired under the Plan and who elect not to accept the Plan, and that this Court confirm the Plan under the so-called "cram-down" provisions of the Plan pursuant to Section 1129(b) of the Code notwithstanding the requirement of Section 1129(a)(8) of the Code as to such Claimants.

7.13   <u>Term of Plan</u>. This Plan shall continue in effect until all sixty (60) monthly installment payments are paid in accordance with this Plan (five years duration per its terms), or in accordance with any approved modification thereto.

7.14   <u>Effectuating Documents; Further Transactions</u>. The Debtor may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

7.15   <u>Exemption from Certain Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

7.16   <u>Revocation of Plan</u>. The Debtor reserves the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans. If the Debtor

revokes or withdraws the Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, the Debtor or any other entity; (b) prejudice in any manner the rights of the Debtor or any other entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other entity.

7.17    Successors and Assigns. The rights, benefits and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

7.18    Reservation of Rights. Except as expressly set forth herein, the Plan shall have no force or effect until the Court enters the confirmation order. Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by the Debtor or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the holders of claims or other entity; or (2) any holder of a Claim or other entity prior to the effective date of the Plan.

7.19    Further Assurances. The Debtor or the reorganized Debtor, as applicable, all holders of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the confirmation order.

7.20    Severability. If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtor, and, to the extent such alteration or interpretation affects the rights or treatment of holders of unsecured claims, such claim holder.

7.21    Return of Security Deposits. Debtor does not have any security deposits held by any person or entity at this time.

7.22    Filing of Additional Documents. On or before the Effective Date, the Debtor may file with the Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

7.23    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## ARTICLE VIII
## DISCHARGE

**8.01 Discharge.** Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

DATED: JANUARY 10, 2011

Respectfully submitted,

*/s/ Karin Frank*　　　　Karin Frank