Judson H. Henry, Esq. (SBN 226743)
P. O. Box 33
Newcastle, CA  95658
Phone:   (916) 670-9564
Fax:       (916) 200-2440
E-mail:  jhhenry2000@yahoo.com

**Attorney for Debtor Karin M. Frank**

# IN THE UNITED STATES BANKRUPTCY COURT

# IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>　　KARIN M. FRANK,<br><br>　　　　Debtor<br>_____ | Case No.:   2010-36150-A-11<br>DC No.:     JHH-1<br><br>Date:         February 20, 2018<br>Time:         10:00 a.m.<br>Courtroom #:   28<br>Judge:        Hon. Michael McManus<br><br>United States Courthouse<br>501 I Street, 7th Floor<br>Sacramento, CA  95814 |

## MOTION FOR ORDER APPROVING

## SALE OF ARCADE PROPERTY FREE AND CLEAR OF LIENS AND INTEREST

I.　　INTRODUCTION

By this Motion, Karin M. Frank, the debtor in this Chapter 11 case ("Frank" or the "Debtor"), seeks an order pursuant to Section 363(b) and 363(f) of the Bankruptcy Code (11 U.S.C.. §363(b), (f)) authorizing the sale free and clear of liens of certain real property located in Sacramento County, California, commonly described as 1421 Arcade Boulevard, Sacramento, CA  95815 (the "Arcade Property"), to Nick Sharpe ("Sharpe"), an individual. There are only two known liens on the property; the first priority lien is the lien of JPMorgan Chase Bank, N.A. ("Chase"), and the second priority lien is the lien of Bob Filderman.  The sale will result in a cash payment to Debtor of approximately $95,000.00, from which Debtor will tender a cash

//

1 payment to Chase of $58,223.23 in full satisfaction of its claim secured by its lien (Deed of Trust) on the Arcade Property.

Prior to Debtor filing this Motion, during about October 2017, Frank took the decision to sell the Arcade Property because because I now live in Colorado Springs, Colorado while the Arcade Property is located in Sacramento, and due to my own health reasons in addition to geographic distance it has become difficult for me to manage the property to the extent that it is now in my own best interest and a sound business decision to sell the Arcade Property. Consequent to this, and very shortly thereafter, Nick Sharp contacted Frank and expressed interest in purchasing the Arcade Property. Ultimately, Frank and Nick Sharp came to terms on the sale/purchase of the Arcade Property for $95,000.00 in "as is" condition. Despite the agreed-upon transaction amount being more than sufficient to pay secured creditor Chase in full its claim secured by the Arcade Property, Bob Filderman refuses to reconvey his now fully satisfied Deed of Trust, despite having been already paid in full and having no legal basis for raising his baseless dispute.

II. FACTUAL BACKGROUND

A. The Property

The property Debtor seeks to sell free and clear of all liens and interests is a parcel of real property located in Sacramento County, California, commonly described as 1421 Arcade Boulevard, Sacramento, CA 95815 (the "Arcade Property"). The Arcade Property is a single family residential real property, which Debtor has heretofore owned and rented out as an income-producing property. The Arcade Property has been and is maintained by Debtor as a rental income property, reorganized pursuant to her confirmed plan, confirmed on or about April 18, 2011. Debtor has made all plan payments in any way associated with the Arcade Property, at present now having completed all required general unsecured payments and having kept current with her plan payment to JPMorgan Chase Bank, N.A. secured by the Arcade Property (all payments May 2011 through January 2018). Regarding the general unsecured claims once due, Debtor received her Section 1141 Order of Discharge on or about August 25, 2016.

//

1     Per Frank's confirmed plan, the claim of JPMorgan Chase Bank, N.A. secured by the Arcade Property was stripped down to $66,830.00, and the claim of Bob Filderman was stripped off entirely and hence rendered entirely unsecured. Because at the present date Debtor has completed all unsecured payments and received her discharge, the balance owing of any unsecured claim to either JPMorgan Chase Bank, N.A. or Bob Filderman (or any general unsecured creditor for that matter) is $0.00. Thus, Bob Filderman's prior claim is now fully satisfied; no amount [$0.00] is owed.

    Debtor now resides in Colorado; because of her difficulties in managing the Arcade Property from Colorado, it is in the best interests of all concerned, including the general societal interest, that Debtor sell the Arcade Property, satisfy the remaining secured claim of secured creditor JPMorgan Chase Bank, N.A., and that Nick Sharp own the Arcade Property such that he may refurbish it and manage it locally.

### B. The Bidding Process

    Having determined that it was in Debtor's best interests to sell the Arcade Property, Debtor accepted the $95,000.00 offer tendered by Nick Sharp to purchase the Arcade Property. Frank and Nick Sharp have entered a Purchase/Sale Agreement for purchase/sale of $95,000.00 for the Arcade Property in "as is" condition, opened escrow, and placed this Purchase/Sale Agreement within escrow. The Escrow Officer is Michelle Schaffert of North American Title Company, and this escrow is assigned number 54808-15098-72-17. While this escrow remains open, it is in "hold" status due to the presence of a deed of trust in favor of Bob Filderman that remains on title to the Arcade Property, and the dispute between Bob Filderman and Debtor as to the propriety of this deed of trust remaining on title (e.g. Bob Filderman's refusal to voluntarily reconvey).

### C. The Purchaser

Nick Sharp is an individual with business address 4005 Manzanita Ave, #6-509 Carmichael, CA 95608. Nick Sharp holds California license #01960207; he purchases properties to rehabilitate and realizes gains by way of his improvement of the physical condition of real properties. Nick Sharpe plans, upon completion of purchase and ownership of the Arcade Property, to work with

1 the existing tenants already residing at the Arcade Property to refurbish and improve the
2 condition of the Arcade Property.

3     D.    The Purchase/Sale Agreement

4 Under the terms of the Purchase/Sale Agreement, the Arcade Property is being sold "as
5 is." The sales price is $95,000.00 cash. Further, in connection with the Purchase/Sale
6 Agreement, Nick Sharp is for all practical purposes assuming all post-transaction risks,
7 obligations, and costs (including, but not necessarily limited to, physical refurbishment of the
8 Arcade Property). In addition, Debtor retains responsibility only for the granting of title and the
9 completion/execution of any other papers required for the transfer of title. Although this sale is a
10 very, very simple transaction, not in any manner complicated, completion of the sale will free up
11 resources available to Debtor to meet ongoing obligations to creditors secured by her remaining
12 reorganized real properties as well as other obligations, as well as simplify Debtors' workload
13 and stress from managing a lower number of real properties.

14     E.    Bob Filderman's Refusal To Reconvey His Deed of Trust, Effectively Blocking
15 The Sale.

16 The terms of the proposed sale of the Arcade Property were agreed upon by proposed
17 buyer Nick Sharpe and Debtor in November 2017. Shortly thereafter, as above, Nick Sharp and
18 Debtor entered into a Purchase/Sale Agreement for the Arcade Property and opened an escrow to
19 complete the contemplated transaction. However, also as above, the still-existent deed of trust in
20 favor of Bob Filderman was discovered upon preliminary title search. At this point, Frank
21 initiated contact with Bob Filderman and reminded him his claim was now fully paid and
22 discharged, asking Bob Filderman to voluntarily reconvey his deed of trust recorded against the
23 Arcade Property. Nonetheless, despite the fact his claim is now paid in full – and discharged
24 pursuant to 11 U.S.C. § 1141(d)(5), Bob Filderman nonetheless refused and refuses to reconvey
25 his deed of trust. Going even further, Bob Filderman contends he is still owed a $60,000.00
26 claim secured by the Arcade Property, despite the prior claim having been rendered entirely
27 unsecured and then discharged, and hence Bob Filderman's lien eliminated. In the end, Bob
28 Filderman refused any further communication with Debtor, and he terminated further

4

**Motion to Sell Free and Clear of Liens and Interests**
**In re Karin M. Frank; Case No. 2010-36150**

communication by stating he "has a lawyer" while at the same time refusing to provide even the name or contact information of this supposed "lawyer" representing him. Debtor has received no further communication from Bob Filderman.

   F.  The First Deed of Trust (and Secured Claim) of JPMorgan Chase Bank, N.A.

  On November 8, 2010, the Court granted Debtor's 11 U.S.C. § 506 valuation motion regarding two claims secured by the Arcade Property [see DKT 208]. The "first in line" of the affected liens was in favor of JPMorgan Chase, N.A. in the amount of approximately $195,000.00, and the "second in line" of these was in favor of Bob Filderman in the amount of $60,000.00. However, consequent to the Court's valuation order, and ultimately consequent to Debtor's confirmed plan, based upon the fair market value of the Arcade Property at the time being $66,830.00, the Court ruled JPMorgan Chase, N.A. held a secured claim in the amount of $66,830.00 with the balance of its total claim generally unsecured, and Bob Filderman held an entirely general unsecured claim of $60,000.00. Because as of August 25, 2016 the Court ordered the Order of Discharge in this case, the two general unsecured claims have a present-date balance/amount owing of $0.00; all that remains in the secured claim of JPMorgan Chase Bank, N.A. with original balance of $66,830.00.

  Debtor has made every secured claim payment to JPMorgan Chase Bank, N.A., to include May 2011 through January 2018. The terms of Debtor's confirmed plan provide for a 30 year term of repayment, with the first five years of this 30-year term at 4% interest and the remaining 25 years of this 30-year term at 5%. An amortization of $66,830.00 at 4% for 30 years results in a remaining principal balance of $60,446.07 after five years (after the 60th payment, made for April 2016). An amortization of this $60,446.07 at 5% for 25 years starting with first payment May 2016 results in a remaining principal balance of $58,223.23 after the payment made for January 2018. Because Debtor has in fact made all required payments starting May 2011 through January 2018, the present-date balance due to JPMorgan Chase, N.A. for its claim secured by the Arcade Property is $58,223.23.

//

//

**Motion to Sell Free and Clear of Liens and Interests**
**In re Karin M. Frank; Case No. 2010-36150**

II.   THE SALE SATISFIES THE SOUND BUSINESS PURPOSE TEST AND SHOULD BE AUTHORIZED PURSUANT TO SECTION 363(b) OF THE BANKRUPTCY CODE

Pursuant to Section 363(b) of the Bankruptcy Code, the Debtor may, after notice and hearing, sell property of the estate other than in the ordinary course of business. Courts generally authorize sales of assets outside the ordinary course of business upon the articulation of a valid business justification. See, *Fulton State Bank v. Schipper (In re Schipper)* 933 F.2d 513, 515 (7th Cir. 1991) (requiring an "articulated business justification"); See *Holders v, Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2d Cir. 1983) ("good business reason"); *240 North Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 North Brand Partners, Ltd.)*, 200 B.R 653, 659 (B.A.P. 9th Cir. 1996) ("valid business justification"); *In re Lady H Coal Co. Inc.*, 193 B.R. 233, 243 (Bankr. S.D. W. Va. 1996) ("sound business purpose"); WBQ P'ship v. Commonwealth of Virginia Dept. of Med. Assistance Servs. (In re WBQ P'ship), 189 B.R. 97, 102 (Bankr. E.D. Va. 1995) (adopting the "'sound business purpose' test"); *In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 482-83 (Bankr. N.D. Ohio 1992) ("sound business purpose"); see also *Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 184 B.R. 648, 653 (S.D.N.Y. 1995) (§363(b) "sales are not limited to emergencies"); *In re America West Airlines, Inc.*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (considering whether transaction is "in the best interests of the estate"); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (C.D. Cal. 1991) (requiring articulated business reason and finding that "sale is in best interest of the estate").

In applying the sound business purpose test, courts consider four elements: (1) a sound business reason or emergency justifying a sale; (2) good faith; (3) adequate and reasonable notice to interested parties; and (4) fair and reasonable purchase price. *In re WBQ P'ship*, 189 B.R. at 102; see also *In re Lady H Coal Co.*, 193 B.R. at 243; *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991). Each of these elements are met in the present case. See Frank Declaration, ¶ 5, Exhibit 1.

//

//

**Motion to Sell Free and Clear of Liens and Interests**
**In re Karin M. Frank; Case No. 2010-36150**

A. Debtor Has Articulated a Sound Business Reason for the Sale

Debtor currently resides in Colorado Springs, Colorado while the Arcade Property is situated in Sacramento, California. In addition to contending with management of the Arcade Property from a long distance, Debtor is contending with chronic health issues as well. It is presently difficult for Debtor to manage and maintain the Arcade Property, and the sale of the Arcade Property will lower the number of properties Debtor must manage in maintain in the Sacramento area, thus lowering her management and stress burden while at the same time freeing time, funds, and other resources for Debtor's management of her remaining real properties. Thus, the sale makes good sense.

Finally, the public interest may be taken into account in determining whether a sound business reason for the sale exists. *In In re Lady H Coal Co.*, 193 B.R. at 243 & 245, for example, the court approved the sale of a coal mine over piecemeal liquidation of assets in part because the purchaser expected to operate the mine, employ people in the community, retain 25% of the debtor's union workforce, and make substantial capital expenditures to improve the productivity of the property. Here, with the sale of the Arcade Property, the purchaser expects and expressly plans to work with the existing tenants residing in the Arcade Property to refurbish and hence improve the physical condition of the Arcade Property as a whole. This improvement of the Arcade Property will result in a positive impact on the public interest, certainly upon the owners and residence of nearby properties as well as the neighborhood and community as a whole

B. The Sale Has Been Proposed In Good Faith

"'Good faith encompasses fair value, and further speaks to the integrity of the transaction. Typical bad faith or misconduct, would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers.'" *240 North Brand Partners*, 200 B.R. at 659 (quoting In re Wilde Horses, 136 B.R. at 842). This Purchase/Sale Agreement is the result of Frank and Nick Sharp coming to terms upon Frank specifically announcing the availability of the Arcade Property to prospective buyers of the type that rehabilitate/refurbish real properties as a line of business. This process produced the best bid from a qualified arm's-
7

**Motion to Sell Free and Clear of Liens and Interests**
**In re Karin M. Frank; Case No. 2010-36150**

length purchaser among a pool of qualified purchasers. The method of choosing the purchaser and the neutral terms of the sale demonstrate that the sale is proposed in good faith. See, *In re Weatherly Frozen Food Group, Inc.*, 149 B.R. at 483 (finding good faith because offer negotiated at arms' length and no director of debtor held any interest or was otherwise related to the prospective purchaser). Here, the offer was negotiated at arms' length and Frank and Nick Sharp hold no interests in common nor comingle any interests of any kind in any manner.

### C. Interested Parties will Receive Adequate and Reasonable Notice

In the context of a Section 363(b) sale, "notice is sufficient if it includes the terms and conditions of the sale, if it states the time for filing objections, and if the estate is selling real estate, it generally describes the property." *In re WBQ Partnership*, 189 B.R. at 103 (quoting In re Karpe, 84 B.R. 926, 930 (Bankr. M.D. Pa. 1988)). Debtor is noticing this Motion concurrently with its filing, and serving all concurrently. This satisfies the reasonable and adequate notice requirement because such served documents describe the property, include the terms and conditions of the sale, and state the time for filing any objections or opposition thereto.

### D. The Purchase Price Is Fair and Reasonable

The highest bid procured is, by definition, a fair and reasonable price for property. *In New Haven Radio, Inc. v. Meister (In re Martin-Trigona)*, 760 F.2d 1334 (2d Cir. 1985), for example, the Second Circuit held that a bid so procured is reasonable, even if the appraisal value was higher. See also *In re Abbotts Dairies, Inc.*, 788 F.2d 143, 149 (3d Cir. 1986). Nick Sharpe's bid is the highest bid Debtor has received for the Arcade Property and therefore constitutes a fair and reasonable price for the Arcade Property. Furthermore, the purchase price is sufficient to fully pay the secured claim of JPMorgan Chase Bank, N.A. that is secured by the Arcade Property.

### III. THE COURT SHOULD AUTHORIZE THE SALE OF THE ARCADE PROPERTY FREE AND CLEAR OF ALL LIENS AND INTERESTS

Debtor requests that this Court approve the sale of the Arcade Property to Nick Sharpe free of all liens and interests pursuant to Bankruptcy Code Section 363(f). Section 363(f) allows

//

for sales of property of the estate "free and clear of any interest" if any one of the following five conditions are met:

    1. applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    2. such entity consents;

    3. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    4. such interest is in bona fide dispute; or

    5. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. §363(f).

These conditions are stated in the disjunctive and satisfaction of any one of the five conditions will justify a sale free and clear of liens and interests pursuant to this section. See, *Citicorp Homeowners Serys., Inc. v. Elliott (In re Elliott)*, 94 B.R. 343, 11 345 (E.D. Pa. 1988); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994). Debtor is aware of two liens on the Arcade Property. These are the first priority lien on the Arcade Property in favor of JPMorgan Chase Bank, N.A. and the second priority lien on the Arcade Property in favor of Bob Filderman. Here, two of the five condition of Section 363(f) are clearly met, specifically (3) and (4). Regarding (3), the aggregate value of all liens is simply the secured claim of JPMorgan Chase Bank, N.A. of $58,223.23 (of note, the value of the Bob Filderman lien is clearly $0.00). Because the $95,000.00 sales price exceeds this, condition (3) is satisfied. Regarding (4), the lien of Bob Filderman is in bona fide dispute. Because the claim of Bob Filderman originally secured by the disputed lien is clearly discharged, Bob Filderman's contemporaneous attempt to nonetheless collect it is an unlawful attempt to collect a discharged debt, and Bob Filderman should receive nothing [$0.00] by way of this lien. Hence, condition (4) is satisfied.

Although Debtor is not aware of any other liens on the Arcade Property, Debtor notes that a number of courts have held that failure to object to the sale after notice and a hearing constitutes implied consent sufficient to satisfy the requirement of Section 363(f)(2). See

1 *Veltman v. Whetzal*, 93 F.3d 517, 521 (8th Cir. 1996) (noting that some courts have found implied consent upon a failure to object); *Elliott*, 94 B.R. at 345 (holder of first mortgage on debtor's property "consented to the sale by failing to make any timely objection after receiving notice of the sale.... [I]mplied consent is sufficient to authorize a sale under §362(f)(2)"); *In re Tabone, Inc.*, 175 B.R. at 858 ("As the Township did not offer any objection, it may be deemed to have consented to the sale for purposes of section 363(f)(2)"); *In re Shar*, 152 B.R. 724, 725 (Bankr. N.D. Ohio 1993) ("[T]he State's failure to object to the sale, or the confirmation of the sale, implicitly conveyed its consent to the sale as found under §362(f)(2)"); but see *In re Roberts*, 249 B.R. 152, 157 (Bankr. W.D. Mich. 2000) (rejecting Implied consent theory despite the fact that "every published opinion and the leading bankruptcy treatises support the.., contention that the consent required by Section 363(f)(2) may be implied by the lienholder's failure to object"). Therefore, to the extent there are any other holders of liens or other interests in the Arcade Property who are on notice of this Motion and who fail to object to this Motion, their consent may be implied and the sale authorized free and clear of those liens and interests pursuant to Section 363(f)(2).

### IV. CONCLUSION

For all of the foregoing reasons, Debtor Karin Frank respectfully requests that this Court exercise its power pursuant to Sections 363(b) and (f) of the Bankruptcy Code to authorize the sale of the Arcade Property to Nick Sharp free and clear of liens, such that:

1. Nick Sharp pays into escrow an amount consistent with the sales price of $95,000;
2. upon closure of escrow $58,223.23 be disbursed to JPMorgan Chase Bank, N.A.;
3. upon closure of escrow $0.00 be disbursed to Bob Filderman;
4. upon closure of escrow the residual funds be disbursed to Frank (less costs Frank has contractually agreed to, if any); and
5. upon closure of escrow title transfer to Nick Sharp free and clear of all liens and any other interests.

Dated: January 16, 2018;

By: ＿＿/s/ Judson H. Henry＿＿＿＿＿
　　　Judson H. Henry, Attorney for Debtor